IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-510-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ODYSSEY MARKETING GROUP, INC., | ) | |
| RODERICK JAMES MACKENZIE, TERRI | ) | |
| A. MACKENZIE, XZONDRIA DENISE | ) | |
| BROWN, AND SONIA IVELISSE | ) | |
| WRIGLESWORTH, | ) | |
| Defendants. | ) | |

This cause comes before the Court on cross-motions for summary judgment and multiple discovery motions.[1] The appropriate responses and replies have been filed and the motions are ripe for ruling. A hearing was held in the matter before the undersigned on April 26, 2017, at Raleigh, North Carolina. For the reasons discussed below, summary judgment in favor of the Odyssey defendants and Wriglesworth is appropriate, the government's motion for partial summary judgment is denied, and the various discovery motions are either denied, denied as moot, or granted.

## BACKGROUND

Plaintiff, the government, filed this action against defendants under the False Claims Act, 31 U.S.C. §§ 3729-33, for claims arising out of the knowing submission of false claims and related false records and statements to the United States. The government further alleges common law claims for unjust enrichment and payment under mistake of fact against Odyssey Marketing. At the times relevant to the complaint, defendants Roderick and Terri Mackenzie owned and managed

---

[1] Also pending are three motions for leave to file excess pages by the United States. Those motions [DE 54, 86, 88] are allowed.

Odyssey Marketing (Odyssey), a Georgia corporation.[2] Odyssey was an approved women-owned small, disadvantaged business contractor under the Small Business Administration's 8(a) program. 15 U.S.C. § 637(a). Defendant Brown was a Contracting Officer Representative with the Army Reserves Family Program (ARFP) and served as Family Programs Manager at Fort McPherson in Georgia. Defendant Wriglesworth is the former director of ARFP. The ARFP provides "relevant and responsive programs and services to Soldiers, Family members, command teams and Civilians throughout the geographically dispersed Army Reserve Community." https://www.arfp.org/about/ (last visited June 6, 2017). These programs and services include training opportunities, survivor outreach services, and financial readiness programs. *Id.*

Odyssey was made aware of the ARFP when it performed work for a separate Army Reserve Directorate, the Warrior Family Assistance Center. In the fall of 2008, Odyssey submitted an unsolicited proposal to ARFP in which it outlined a proposed integrated marketing strategy which included literature development, web strategies, and branding work. Primary to Odyssey's proposal was the creation of a central point of distribution for all promotional items, in support of which Odyssey would perform a master inventory report and generate a web-based ordering system that would allow for tracking of distribution patterns and consumption trends. Following a meeting with Odyssey and the Family Program directors on September 22, 2008, defendant Brown, who was present at the meeting, directed that ARFP personnel send materials to Odyssey to move forward with the central point of distribution piece of Odyssey's proposal. Although at the time there was no contract in place, defendant Brown told the regional Family Programs offices that there was a contract in place with Odyssey, a "done deal," and to send all family-related program materials to the Odyssey warehouse in Georgia. [DE 96-7; Odyssey def's Ex. 7]. The

---

[2] The Court will refer to these defendants as "Odyssey and the MacKenizes," "the Odyssey defendants," or collectively as "Odyssey."

2

Family Program offices complied and materials were shipped to Odyssey's warehouse beginning in approximately November 2008. Further, because they had been told a contract was in place, ARFP directors and managers began requesting services from Odyssey which Odyssey provided. In addition to the warehousing services, Odyssey also provided event management services, including management of the ARFP Army Family Action Plan Conference in Florida in June 2009.

On September 30, 2009, Odyssey was awarded Delivery Order No. W911SE-09-F-0208 (the 0208 contract), issued by Mission & Installation Contracting Command Center – McPherson. Cmp. Ex. 21. The contract was a firm fixed-price contract for a period of one-year and named Brown as the Contracting Officer Representative (COR) and task monitor. The contract included a continuation of Odyssey's point of delivery services, and further tasked Odyssey with the development and implementation of a comprehensive web portal. The Deputy Director of the Contracting Administration Support Office (CASO) has stated that she is "personally aware that Fort McPherson contracting personnel understood the 0208 Contract to be a vehicle for permitting Odyssey to continue to provide on a going forward basis the services" then being provided during the unauthorized commitment (UAC) period, or period prior to entry into the 0208 contract. [DE 95-5, Shelton Decl. ¶ 13].

During the course of the 0208 contract, Odyssey submitted invoices to ARFP which were approved and submitted for payment by Brown from October through December 2009 and thereafter by Brown's successor, Ms. Douglas. The Contracting Officer (CO), K. Jan Stowell, designated Brown as the COR on the 0208 contract and authorized Brown to verify that Odyssey performed the requirements of the contract and to accept services performed under the contract by

3

invoice review and Wide Area Work Flow[3] access. Odyssey further submitted monthly activity summary reports while performing the 0208 contract.

Because there was no contract in place during the UAC period, Odyssey could not submit invoices by the normal course, the Wide Area Work Flow, and thus provided, at the request of Brown and Wriglesworth, open invoice reports which included copies of their invoices from the UAC period. These reports were provided in October 2009 and April 2010. It April 2010, the Army Reserve Command (USARC) determined that the best way to handle payment for the work performed by Odyssey during the UAC was to pursue a ratification of the unauthorized commitment. Notwithstanding the decision to pursue the ratification process, Brown issued a one-time utility payment to Odyssey in July 2010 for work performed during the UAC in the amount of $715,509.14. Upon receipt of these funds, Ms. MacKenzie initiated action to return the utility payment to the government as the payment notification did not have a contract number and the invoice number listed did not match an invoice within Odyssey's accounting system; the funds were in fact retrieved from Odyssey's account by the Defense Finance and Accounting Service.

The circumstances surrounding the unauthorized commitment and issuance of the utility payment by ARFP were investigated by Col. Rafael Torres at the appointment of the Chief of Staff, USARC from August 2010 to November 2010. The circumstances are described in Col. Torres' report as follows:

> The Army Reserve Family Programs Directorate (ARFPD) entered into an unauthorized procurement of services from Odyssey Marketing, Inc. from June 2008-June 2009. Odyssey provided services to the Warrior Assistance and Family Center (WFAC) under a valid contract from September 2007-October 2010, but a new contract was never written/approved to include new and expanded services once WFAC transitioned into ARFPD in May 2008. The then Interim Director of ARFPD clearly failed to oversee the contract process and the assigned COR encouraged Odyssey to provide services while mistakenly informing them that contract approval was a fait accompli. Odyssey performed the services; returned

---

[3] Wide Area Work Flow is an electronic method for accepting invoices.

4

payment after it was deemed unauthorized; and to date has not been paid for the services it rendered from June 2008-June 2009. ARFPD and Odyssey now have a valid contract in place since September 2009.

[DE 97-14, Torres 15-6 Investigation Rpt. at 1]. In his conclusions, Col. Torres recommended that:

> USARC conduct a contract ratification action to enable the Command to pay Odyssey for the services rendered. Although a valid written contract was not in place, a USARC COR (Ms. Brown-Edwards) under the implicit or explicit authorization of a USARC Program Director (COL Grigsby) entered a verbal contract with Odyssey by mischaracterizing the status of the presumed contract and encouraging that services be rendered/continued to be rendered. Odyssey, in good faith, provided all required services. Furthermore, no one in ARFPD complained about the quality of the services provided to the point that follow-on contracts were awarded to Odyssey for FY10 and FY11.

*Id.* at 12.

On September 15, 2011, a request for approval of unauthorized commitment, prepared by Wriglesworth, was entered recommending approval from Mission Installation Contracting Command (MICC). Reviewing specialists determined in March 2012 that the unauthorized commitment amount of $937,702.99 was fair and reasonable. [DE 97-20 at 9]. Upon the departure of Contracting Officer Faith Shelton in March 2012, Odyssey's UAC file was transferred to Gail Williams, another Contracting Officer, who began additional review of the UAC request. In November 2013, Odyssey requested a decision from the Contracting Officer on the UAC request. In January 2014, a former Odyssey advisor made a Department of Defense hotline complaint stating that Odyssey had not yet been paid for services rendered in 2009 during the UAC period. The hotline complaint led to an investigation of the non-payment of the UAC invoices. An internal Army audit completed in June 2014 concluded that the UAC was not "sufficiently supported to show that government officials requested and received most of the supplies and services" due to a failure to implement proper management controls by ARFP and that some "supplies and services

5

[] potentially resulted in some overlap from 2007 through 2012" but there was "no evidence of duplicate payments". [DE 96-16 at 45-46].

Although the government has alleged false claims in relation to a number of actions and invoices[4] submitted by Odyssey, it currently seeks summary judgment in its favor as to two invoices – Invoice 29071 and 29073. Invoices 29071 (71) and 29073 (73) were submitted by Odyssey in October 2009, after the start of the 0208 contract. Invoice 71 was dated October 5, 2009, and was for inbound freight with a stated ship date of September 17, 2009. The invoice amount was for $49,999.74 and the supporting freight documents reflected shipping expenses based upon deliveries which were made in June 2009, prior to the start of the 0208 contract. Invoice 73 was dated October 6, 2009, and was for $500,000 for a hosting platform provided by a subcontractor, Horizon, with a stated ship date of October 6, 2009. A hosting platform created by Horizon was operational by June 2009; Horizon did not complete additional work for Odyssey after September 2009.

On September 28, 2015, the government filed this civil complaint against Odyssey, the MacKenzies, Brown, and Wriglesworth to recover statutory damages and civil penalties under the False Claims Act (FCA), 31 U.S.C. §§ 3729-33,[5] as well as to recover all available damages for unjust enrichment and payment under mistake of fact. The gravamen of the government's complaint is that the Odyssey defendants submitted false claims as a part of a fraudulent scheme to obtain payment for work performed outside an authorized contract and prior to the execution and period of performance of the 0208 contract. The government alleges that Odyssey submitted claims for unauthorized work at the instruction of Wriglesworth, that Brown, *inter alia*, substituted

---

[4] Specifically, Invoices 29071, 29073, 29074, 29077, and 29078 are cited in the complaint.
[5] Specifically, the government alleges FCA claims for submission of false claims under § 3729(a)(1)(A); false statements to get a claim paid under § 3729(a)(1)(B); and conspiracy to get a false claim paid under § 3729(a)(1)(C).

6

false supporting documents in order to gain approval for a "utility payment" which would reimburse Odyssey for work performed outside the contract period, and that Wriglesworth and Brown allowed Odyssey to define its own contract requirements, receive advance procurement information, and provide unauthorized commitments. The government further alleges that the 0208 contract was awarded based upon false records and false statements, as were subsequent contracts which were awarded to Odyssey in 2010 and 2012.

In addition to a number of discovery motions filed by the parties, before the Court are a motion for partial summary judgment by the government regarding two specific invoices it argues indisputably represent false claims, a motion for summary judgment on all claims by the Odyssey and MacKenzie defendants, and a motion for summary by Wriglesworth. Brown, although she has answered the complaint, has not filed any discovery-related or dispositive motions.

## DISCUSSION

I. Discovery motions

A. *Motion filed by the United States*

The United States has moved to quash defendant Wriglesworth's notice of 30(b)(6) deposition as unduly burdensome, overly broad, and without reasonable notice. [DE 61]; *see* Fed. R. Civ. P. 26; 30(b). Although what constitutes "reasonable notice" of a deposition is not provided by the rules, fourteen days' notice has been determined to be presumptively reasonable. *Tri Investments, Inc. v. Aiken Cost Consultants, Inc.*, No. 2:11CV4, 2011 WL 5330295, at *1 (W.D.N.C. Nov. 7, 2011). Wriglesworth's notice of 30(b)(6) deposition was provided to the government just nine days prior to the scheduled deposition. The government further argues that Wriglesworth, whose Rule 30(b)(6) notice is directed to non-parties which are government entities, failed to subpoena those parties and to comply with applicable *Touhy* regulations.

7

> In *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951), the Supreme Court upheld a regulation which set forth administrative procedures to be followed when demands for information are received by federal employees. *Touhy* held that it is appropriate for the head of an agency "to prescribe regulations not inconsistent with law for 'the custody, use, and preservation of the records, papers, and property appertaining to' [the agency]." *Touhy,* 340 U.S. at 468. Additionally, pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called *Touhy* regulations to govern conditions and procedures by which their employees may testify about work-related issues at trial. *United States v. Soriano–Jarquin,* 492 F.3d 495, 504 (4th Cir.2007) (citing *Touhy,* 340 U.S. at 468).

*United States v. Barringer*, No. 5:12-MJ-1803-RJ-1, 2013 WL 663713, at *2 (E.D.N.C. Feb. 22, 2013). Relevant here, 32 C.F.R. § 516.41(d) provides that individuals seeking information from Department of the Army personnel must at least fourteen days before the date of production submit a written request. Wriglesworth's response does not address her failure to comply with *Touhy* procedures in this case. Accordingly, for good cause shown, the government's motion to quash [DE 61] is granted.

B.   *Motions filed by defendant Wriglesworth*

Defendant Wriglesworth has moved to compel the government's responses to her first and second set of document requests and first set of interrogatories. [DE 67 & 75].[6] As to Wriglesworth's motion to compel responses to her first set of interrogatories, such interrogatories were served on October 31, 2016, which resulted in the government's responses being due December 5, 2016, after the discovery period closed on November 30, 2016. *See* Fed. R. Civ. P. 33(b)(2) (answers to interrogatories due within thirty days after service); *see also* Fed. R. Civ. P. 5(b)(2) (additional three days is added to response period under Rule 6(d)); Fed. R. Civ. P. 6(a)(1)(C); *Yongo v. Nationwide Mut. Ins. Co.*, No. 5:07-CV-94-D, 2008 WL 793451, at *2 (E.D.N.C. Mar. 25, 2008). Local Civil Rule 26.1(b) provides that all discovery "shall be served

---

[6] The government's motion for extension of time to file its response to Wriglesworth's motion to compel responses to her first and second set of document requests [DE 74] is allowed.

8

so as to allow the respondent sufficient time to answer prior to the time when discovery is scheduled to be completed." Because Wriglesworth's discovery request was not filed with sufficient time to allow the government to respond within the discovery period, her motion to compel responses [DE 75] is properly denied.

Wriglesworth's remaining motion to compel responses to document requests asserts that in providing thousands of pages of documents to Wriglesworth which are not appropriately labeled, classified, or identified, the government has in essence not responded to Wriglesworth's request. [DE 67]. The government has responded that Wriglesworth's requests were unreasonable and unduly burdensome and that Wriglesworth failed to comply with Local Civil Rule 7.1(c)(2), which requires parties to in good faith meet and confer prior to filing a motion to compel.

In light of the numerous disputes between the parties regarding discovery in this matter, and in light of the fact that the government has responded to Wriglesworth's requests, albeit not in the format or manner she would prefer, Wriglesworth's failure to comply with the Court's Local Rule to attempt to resolve her issue prior to bringing it before the Court is fatal to her request. The motion [DE 67] is denied.

C. *Motions filed by defendants Odyssey and Mackenzie*

Defendants Odyssey and MacKenzie have moved to compel the government to produce a report by Special Agent Raybourn. [DE 43]. The Odyssey and MacKenzie defendants have also moved to compel production of other documents withheld by the government as privileged. [DE 63, 65]. The Odyssey defendants' first motion to compel production of Agent Raybourn's report requested production of such report prior to the taking of defendants' depositions in December 2016. As that time has passed, the motion [DE 43] is hereby denied without prejudice as moot. The government asserts that the motion to compel document responses [DE 63] is now moot as it

has provided the documents to Wriglesworth which she seeks in her motion. Absent any information to contradict the government's assertion, the motion [DE 63] is denied as moot. As to the remaining motion seeking an order compelling production of reports, a hotline complaint, and a plan of investigation, the government asserts that the second and third items requested have been produced and the motion is therefore partially moot. Further, because, as discussed more fully below, summary judgment is appropriate in favor of Odyssey and the MacKenzies, the Court denies the remaining discovery motion [DE 65][7] without prejudice.

II.  Motions for summary judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v.*

---

[7] Although the docket reflects that the motions at DE 65 and 67 were filed on behalf of all defendants, the motions themselves reflect that they were filed only on behalf of Odyssey and the MacKenzie defendants. The clerk is DIRECTED to correct the docket to reflect the proper filing parties.

10

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

A.  *Odyssey defendants' summary judgment motion*

To prevail on a claim under the False Claims Act (FCA), a plaintiff must demonstrate that (1) defendant made a false statement or engaged in a fraudulent course of conduct; (2) the statement or conduct was carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay money or forfeit money due and owing. *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) (*Harrison II*). The FCA was enacted following the Civil War to address fraud by contractors perpetrated during the war. *United States v. Bornstein*, 423 U.S. 303, 309 (1976). The focus of the FCA

> remains on those who present or directly induce the submission of false or fraudulent claims. A "claim" now includes direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs. The Act's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." And the Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) (*Escobar*) (internal citations omitted). Civil penalties under the FCA are punitive in nature, with defendants being subject to treble damages plus civil penalties of up to $10,000 per false claim, as adjusted for inflation. *Id.* (citing 31 U.S.C. § 3729(a)).

"[T]he statute is not intended to 'punish honest mistakes or incorrect claims submitted through mere negligence'", *United States ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 452 (4th Cir.

2011) (*Ubl*) (internal citation omitted) (quoting *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir.2010) (*Owens*)), but there need not be the specific intent to defraud in order to satisfy the Act's scienter requirement – reckless disregard of the truth or falsity of the information presented is sufficient. *Owens*, 612 F. 3d at 728. However, where the government has knowledge of the facts underlying an allegedly false record or statement, such knowledge can negate the scienter requirement for violation of the FCA. *Ubl*, 650 F.3d at 452 (quoting *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002)).

The government has failed to create a genuine issue of material fact as to whether the Odyssey defendants acted with the requisite scienter. What is plain from the evidence currently in the record is that the Odyssey defendants had been providing services to the Army Reserves under a separate contract when they approached the ARFP with pitch to provide them with marketing and product distribution services as well as event management services. Defendant Brown, the COR for the ARFP, was sold on Odyssey's pitch and began implementing the first phase of work to include shipment of goods from regional ARFP offices to Odyssey's warehouse in Georgia. Brown assured Odyssey that a contract was in the works and that they should proceed in providing services to the ARFP. Odyssey proceeded to provide ARFP with the services it had outlined in its solicitation of a contract.

While the government contends that Brown lacked the authority to enter into a contract with Odyssey and that Odyssey was aware that Brown was not a Contracting Officer but was rather only a COR, "[t]hat 'permission to provide the items in question was not granted by the right [] official . . . would hardly lead to the conclusion that [Odyssey]'s invoices purported to bill for something other than what [it] delivered." *Owens*, 612 F.3d at 731 (4th Cir. 2010). The evidence

supports that Brown instructed Odyssey to begin performing work and that Odyssey did so. *See United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999) ("We decline to hold [defendant] liable for defrauding the government by following the government's explicit directions."); *United States ex rel. Searle v. DRS Servs., Inc.*, No. 1:14-CV-00402, 2015 WL 6691973, at *9 (E.D. Va. Nov. 2, 2015), *aff'd sub nom. United States ex rel. Searle v. DRS C3 & Aviation Co.*, No. 15-2442, 2017 WL 715815 (4th Cir. Feb. 23, 2017) (*Searle*) ("Following government instructions cannot constitute a false claim.").

The government has plainly come forward with evidence that there were irregularities in the award of work to and management of Odyssey by ARFP; its evidence is simply insufficient to create a genuine issue of material fact as to whether Odyssey set about to defraud or acted with reckless disregard of the truth when submitting invoices for payment. For example, Invoice 71, which was submitted for payment during the 0208 contract period, was supported by documentation reflecting shipping which occurred prior to the contract period – Odyssey did not try to conceal this fact or manipulate its records to reflect otherwise. That the government, through Brown, was aware that activities included in Invoice 71 occurred pre-contract but elected to pay the invoice does not support a finding of the requisite scienter by Odyssey. Brown was specifically authorized to accept Odyssey's services and review Odyssey's invoices for payment under the 0208 contract. [DE 116-1 at 1]. Further, as to Invoice 71, Odyssey informed ARFP of an error in its documentation but the invoice was still paid. [DE 111-7 at 49-50; R. MacKenzie Dep. at 228-229]. Rod MacKenzie believed the invoice was paid because it related to a firm fixed price line item under the 0208 contract. Such a belief under these circumstances does not support a finding of bad faith or reckless disregard for the truth.

Invoice 73, which related to a web-hosting platform created by subcontractor Horizon, was also billed during the contract period. Although the government contends that evidence supporting that the platform was created and usable prior to the 0208 contract period supports a finding of scienter, Odyssey has proffered evidence that, even though it may have been available for use prior to the 0208 contract, it was not actually used until the 0208 contract period. That Odyssey committed work to a subcontractor prior to the formation of the 0208 contract, again, does not itself support a finding of scienter because Odyssey in fact appears to have provided the services it was obligated to provide to the ARFP to the ARFP's satisfaction.

Conspicuously absent from the record in this case is any evidence of collusion between ARFP employees Brown and Wriglesworth and the Odyssey defendants. The government has failed to come forward with any evidence that Brown, Wriglesworth, or any other member of the ARFP received kickbacks or other incentives to pass through or approve Odyssey's false claims for payment.[8] Further lacking from the record is an indication that Odyssey was payed twice for work it performed during the UAC and for which it submitted invoices during the 0208 contract period. Ms. Shelton's review of the invoices for the UAC ratification determination noted where invoices were insufficiently supported or otherwise in question, and the government is still free, should it elect to ratify the UAC work, to decline to pay those invoices.

Finally, the government's own investigating agent in this case presents equivocal testimony at best that the evidence reveals fraudulent activity by Odyssey. Special Agent (SA) Raybourn has stated that he found no information that indicate that fraud was committed in the award of the 0208 contract. [DE 96-21 at 28; Raybourn Dep. at 203]. When asked about evidence of fraud

---

[8] Special Agent Raybourn does note in his deposition that he had been told that someone had seen Ms. MacKenzie giving Faith Shelton some type of winnings at a casino which was characterized as a bribe, [DE 104-18 at 5; Raybourn Dep. at 35], but the government has presented no further evidence which would support this allegation.

committed by Odyssey, SA Raybourn pointed to missing invoices and duplicate invoices as potential indicators of fraud. *Id.* at 32; 230. When asked: "Do you believe Odyssey committed fraud relating to the UAC?" SA Raybourn answered: "I believe there's a possibility of that, yes." *Id.* at 34-35; 232-33. A possibility of fraud is simply insufficient to support a claim under the FCA at this stage of the proceedings.

As to the fourth element of an FCA claim, it is difficult to conclude that the government was damaged by any alleged false claims in invoicing by the Odyssey defendants. Where there may be some irregularity in Odyssey's invoicing, the government concedes that the services identified on the invoices were provided to and enjoyed by the government. "A claim is 'ultimately borne by the Treasury. . . . [where] the government not only received less than it was entitled to under the contract, it performed services and expended funds . . . for which it was not reimbursed.'" *United States v. Douglas*, 626 F. Supp. 621, 629 (E.D. Va. 1985). The Court is not aware of any evidence which would support the conclusion that Odyssey failed to provide the marketing and distribution services it either informally or pursuant to a contract agreed to provide. This is supported by the Army Reserve's own internal investigation of its unauthorized commitment which concluded that "Odyssey, in good faith, provided all required services. Furthermore, no one in ARFPD complained about the quality of the services provided to the point that follow-on contracts were awarded to Odyssey for FY10 and FY11." [DE 97-14, Torres 15-6 Investigation Rpt. at 12]. When asked at his deposition if he now believed that Odyssey did not in fact provide all required services, Col. Torres responded in the negative. [DE 97-15 at 6; Torres Dep. at 102]. In the face of this conclusion, and in the absence of any compelling new evidence which would call into question the Army Reserve's earlier determination, government's argument that failure to follow the technical letter of contracting regulations necessarily results in the submission of false claims or statements as defined by the FCA is untenable in this case.

As noted above, the government has failed to come forward with any evidence that a conspiracy existed between Odyssey and any member of ARFP or the Army Reserves. 31 U.S.C. § 3729(a)(1)(C). A FCA conspiracy claim requires a plaintiff to demonstrate "the existence of an unlawful agreement among [the d]efendants to have a false claim reimbursed by the Government," that the false statement was material to the government's decision, and that defendants agreed to use the false statement in furtherance of their unlawful purpose. *Searle*, No. 1:14-CV-00402, 2015 WL 6691973, at *15 (citation omitted). No evidence of an agreement between the defendants has been presented in this case. Although the government relies on the existence of an "implicit" agreement, it has proffered no evidence of a meeting of the minds to defraud the government. Its FCA conspiracy claim fails.

As the government has failed to create a genuine issue of material fact as to whether Odyssey violated the False Claims Act, it cannot proceed on its FCA claims against the MacKenzies individually. The government's theory of individual liability against the MacKenzies rests on their personal submission of false claims to the United States. However, as discussed above, the evidence in the record, even when viewed in the light most favorable to the government, does not support the existence of intent to defraud the government or reckless disregard of the truth or falsity of the statements or claims submitted or that the government was damaged by the MacKenzies' actions.

Finally, the government opposes entry of summary judgment in the Odyssey defendants' favor on its common law claims for unjust enrichment and payment by mistake of fact. "Generally, when money is paid to another under the influence of a mistake of fact, and it would not have been paid had the person making the payment known that the fact was otherwise, the money may be

16

recovered." *Tarlton v. Keith*, 250 N.C. 298, 306 (1959). A claim for unjust enrichment requires more than enrichment at the expense of another:

> First, one party must confer a benefit upon the other party. Second, the benefit must not have been conferred officiously, that is it *must not be conferred by an interference in the affairs of the other party* in a manner that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be measurable. Last, the defendant must have consciously accepted the benefit.

*JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 541–42 (2013) (internal quotations and citations omitted) (emphasis in original).

The government argues that the completeness of the government's knowledge is in dispute and that the value of the services provided is in dispute. However, Odyssey has proffered evidence that the government was satisfied with the services provided by Odyssey and that it did not pay twice for any service. Insofar as there are disputed invoices for work performed during the UAC, there is a separate and distinct internal review process concerning whether work performed during that period should be ratified and paid. The Court does not find on the record before it a genuine issue of material fact as to whether Odyssey has been unjustly enriched or that it has been paid by the government based on a mistake of fact. Accordingly, the motion for summary judgment by the Odyssey defendants is granted.

B.  *Wriglesworth's summary judgment motion*[9]

Defendant Wriglesworth's motion for summary judgment in her favor is also granted. In response to Wriglesworth's motion, the government states that "the central fact in dispute is that Defendants schemed to use the 0208 Contract to pay for unauthorized work that had already been done pre-contract" and that Wriglesworth, "along with Odyssey Defendants and Defendant Brown, caused the 0208 Contract award, false claims and sales invoices to be submitted under the FCA."

---

[9] Wriglesworth's motion for leave to file statement of material facts as a separate document [DE 101] is ALLOWED.

[DE 108 at 4]. The specific actions by Wriglesworth relied on by the government are: seeking contract approval for the 0208 contract, signing and approving the 0208 contract proposal documents, confirming there was no contract in place and working with the contract office to obtain a contract, working with defendant Brown in seeking the 0208 contract, directing and allowing unauthorized work to continue after the absence of a contract was established, responding to unauthorized service issues as the 0208 contract was being considered, allowing Odyssey to participate in the contract approval process, participating in the 0208 contract approval with knowledge that Odyssey had recently been providing unauthorized services, failing to provide oversight of her contracting employee, ignoring warning signs that the 0208 contract and 0208 invoices were part of a fraudulent scheme, participating throughout the approval of the 0208 contract that was misused to obtain payment for unauthorized work, and reviewing and recommending the approval of the UAC ratification request.

As discussed above, the government's investigating agent has determined that there was no fraud in the actual award of the 0208 contract. Although there is some mention in the record of possible gratuities received by Wriglesworth from the Odyssey defendants related to Wriglesworth's expenses at the ARFP Army Family Action Plan Conference in Florida in June 2009, the FCA's six-year statute of limitations would bar any claim arising from those alleged actions as this complaint was not filed until September 2015. 31 U.S.C. § 3731(b). Further, there is no evidence of collusion or a conspiracy between Wriglesworth and any other defendant. While the government relies on Wriglesworth's recommendation for approval and ratification of the UAC period as evidence that she was involved in a scheme to defraud the government, or at a minimum recklessly disregarded the truth when she made that recommendation, the record before the Court does not support the existence of a scheme to defraud, and thus the Court does not find

18

there to be a genuine issue of material fact as to whether Wriglesworth was a part of that scheme or was deliberately ignorant of it. Wriglesworth's motion for summary judgment is granted.

C.  *United States' partial summary judgment motion*

The United States has moved for partial summary judgment in its favor as to Invoices 71 and 73. For the reasons discussed in Section II. A., the government's motion is denied.

## CONCLUSION

For the foregoing reasons, the Odyssey defendants' motion for summary judgment [DE 94] is GRANTED; defendant Wriglesworth's motion for summary judgment [DE 99] is GRANTED, and the government's motion for partial summary judgment [DE 90] is DENIED. The motions for leave to file excess pages by the government [DE 54, 86, 88] are ALLOWED. The government's motion to quash [DE 61] is GRANTED. The government's motion for extension of time [DE 74] is ALLOWED. Wriglesworth's motions to compel responses [DE 67 & 75] are DENIED. The Odyssey defendants' motion to compel [DE 43] is DENIED WITHOUT PREJUDICE as MOOT; motion to compel document responses [DE 63] is DENIED AS MOOT; and motion to compel [DE 65] is DENIED WITHOUT PREJUDICE. Wriglesworth's motion for leave [DE 101] is ALLOWED.

The clerk is DIRECTED to refer this matter to the appropriate United States Magistrate Judge for pretrial conference as to the remaining defendant, Xzondria Brown.

SO ORDERED, this __7__ day of June, 2017.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE